**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KRYSTAL BIOTECH, INC., | |
| Plaintiff, | CIVIL ACTION |
| v. | Case No. |
| RENOVATIO CLINICAL CONSULTANTS, LLC D/B/A RENOVATIO CLINICAL, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

For its complaint against Defendant Renovatio Clinical Consultants, LLC D/B/A Renovatio Clinical ("Renovatio"), Krystal Biotech, Inc. ("Krystal") alleges as follows:

## INTRODUCTION

1. This case is about a clinical research organization that contracted with Krystal to perform clinical trials, performed only a portion of the contracted work, and then, when the contracts were terminated by Krystal, simply refused to give the remaining money back as required by the contract. For more than ten months after the termination of the contracts, Renovatio has stonewalled, deflected, and ignored Krystal's repeated demands for the return of $870,432.24 in unused prepayments. Renovatio has offered no legitimate justification for its retention of these funds. It has provided no final accounting as contractually required. It has made no payment, not even a partial one. Its conduct is not a mere oversight or administrative delay; it is a deliberate and continuing refusal to honor its clear and unambiguous contractual obligations.

2. This action arises from Renovatio's failure to return $870,432.24 as stated in Paragraph 1 above in prepayments made by Krystal under five Clinical Trial Agreements (the "CTAs") that were terminated in 2025. Under the express terms of the CTAs, Renovatio was

required to promptly return all unused prepayments upon termination and to deliver a final accounting within ninety days. Renovatio has done neither. Despite receiving four written communications from Krystal's accounting team, a formal demand letter from Krystal's General Counsel, and subsequent communications from outside counsel, Renovatio has failed to refund a single dollar. Its excuses—staffing changes, internal reconciliations that never materialized, and a principal who claimed unavailability due to a family emergency—are a transparent pattern of delay designed to avoid a clear financial obligation.

3.      Krystal brings this action for breach of contract and, in the alternative, unjust enrichment and seeks compensatory damages, restitution, pre-judgment interest, and such other relief as this Court deems just and proper.

## THE PARTIES

4.      Plaintiff Krystal Biotech, Inc. ("Krystal") is a corporation organized under the laws of the State of Delaware with its principal place of business at 2100 Wharton Street, Suite 701, Pittsburgh, Pennsylvania 15203, within the Western District of Pennsylvania. Krystal is a citizen of Delaware and Pennsylvania.

5.      Defendant Renovatio Clinical Consultants, LLC ("Renovatio") is a limited liability company formed under the laws of Texas with offices at One Riverway, Suite 1700, Houston, Texas 77056 with an assumed name of Renovatio Clinical. Upon information and belief, no member of Renovatio is a citizen of the State of Delaware or the Commonwealth of Pennsylvania. Plaintiff will amend these jurisdictional allegations if discovery reveals additional or different citizenship facts concerning Defendant's members.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which grants district courts original jurisdiction over all civil actions where the matter in controversy

2

exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

7.     Complete diversity of citizenship exists between the parties. Krystal is a citizen of Delaware and Pennsylvania. Upon information and belief, no member of Renovatio is a citizen of Delaware or Pennsylvania.

8.     The amount in controversy far exceeds $75,000, exclusive of interest and costs. Renovatio's wrongful retention of Krystal's prepayments totals $870,432.24—nearly twelve times the jurisdictional threshold.

9.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred within the Western District of Pennsylvania, where Krystal is headquartered. The CTAs directed all invoices and payment communications to Krystal's Pittsburgh office. Krystal made the prepayments at issue from Pittsburgh. Krystal has suffered, and continues to suffer, financial injury in this District when Renovatio failed to return those funds.

10.     This Court has personal jurisdiction over Renovatio because Renovatio entered into contracts with Krystal, a Pittsburgh, Pennsylvania headquartered company; directed notices, invoices, and payment-related communications to Pittsburgh, Pennsylvania; received substantial payments from Krystal in connection with those agreements; and its failure to return the funds has caused injury in Pennsylvania.

11.     Pursuant to Section 10.6 of the CTAs, the agreements are governed by the laws of the State of Delaware, without regard to its rules of conflicts of laws.

## FACTUAL BACKGROUND

### The Clinical Trial Agreements

12.    Krystal is a commercial-stage biotechnology company headquartered in Pittsburgh, Pennsylvania.

13.    Renovatio operates clinical research sites in El Paso and The Woodlands, Texas.

14.    Between 2023 and 2024, Krystal and Renovatio entered into five Clinical Trial Agreements (collectively, the "CTAs"), each effective as of January 11, 2024, under which Renovatio agreed to conduct clinical trials of Krystal's investigational drugs at Renovatio's research sites as follows:

a.   KB707-01 CTA with Principal Investigator Haroutioun S. Shahinian, MD (El Paso site), a true and correct copy is attached hereto, made a part hereof and marked Exhibit 1;

b.   KB707-01 CTA with Principal Investigator Jonathan Jin-Chih Lu, MD (The Woodlands site), a true and correct copy is attached hereto, made a part hereof and marked Exhibit 2;

c.   KB707-02 CTA with Principal Investigator Haroutioun S. Shahinian, MD (El Paso site), a true and correct copy is attached hereto, made a part hereof and marked Exhibit 3;

d.   KB707-02 CTA with Principal Investigator Jonathan Jin-Chih Lu, MD (The Woodlands site), a true and correct copy is attached hereto, made a part hereof and marked Exhibit 4;

e.   KB408 CTA with Principal Investigator Ather J. Siddiqi, MD (The Woodlands site), a true and correct copy is attached hereto, made a part hereof and marked Exhibit 5.

15.     The CTAs identified in Paragraphs 14 (a)-(d) above were subsequently amended, true and correct copies of the Amendments are attached hereto, made a part hereof and marked Exhibits 6-12.

16.     Each CTA is a valid and enforceable contract supported by mutual consideration. *Envolve Pharm. Sols. v. Rite Aid Headquarters Corp.*, 2023 Del. Super. LEXIS 134, at *33-34 (Del. Super. Mar. 17, 2023).

### Krystal's Prepayment and Renovatio's Refund Obligations

17.     Under Section 3.3 of the CTAs, Krystal made substantial advance prepayments to Renovatio to cover estimated costs of study subjects. The total cash paid by Krystal to Renovatio under the CTAs was $2,075,663.49.

18.     Section 3.3 of the CTAs provides, in relevant part:

> If this Agreement expires or is terminated for any reason and all Prepayments have not been fully utilized by Sponsor to offset invoices of Institution, all of the remaining amount of all Prepayments will be promptly refunded by Institution to Sponsor.

19.     Section 9.7 of the CTAs provides, in relevant part:

> Institution shall deliver to Sponsor, within ninety (90) days after expiration or early termination of this Agreement, a final accounting of amounts due (and reasonable supporting documentation, which requirement shall be satisfied by properly completed case report forms as to completed visits by Study Subjects), taking into account payments made and not yet made under the Payment Schedule, and expenses reimbursable pursuant to Section 9.5, from one Party to the other Party. All undisputed amounts due shall be paid within sixty (60) days thereafter. In case of unearned advance subject payment at time of study termination, Institution shall refund unearned advance to Sponsor.

20.     Section 9.8 provides that the rights and obligations under Sections 3.3 and 9.7, among others, survive expiration or termination of the CTAs.

21.     Section 10.1 of the CTAs provides that the remedies set forth therein are not exclusive and that the party suffering from a breach or default may pursue all other remedies, both legal and equitable, alternatively or cumulatively.

## Termination of the CTAs

22.     Section 9.2(a) of the CTAs permits Krystal to terminate any CTA "upon thirty (30) days' written notice to Institution, in its sole discretion."

23.     On August 8, 2025, Krystal sent formal written notice via overnight courier to Renovatio at its principal office, addressed to Talal A. Kayal MD, MPH terminating the following CTAs pursuant to Section 9.2(a): KB408 (The Woodlands), KB707-0l (El Paso), KB707-01 (The Woodlands), and KB707-02 (The Woodlands). The termination notice was signed by David Chien, MD, Senior Vice President of Clinical Development, with a copy to Shannon L. Warren, JD, identified as General Counsel in the CTAs' notice provisions.

24.     On September 18, 2025, Krystal sent a separate formal written notice via overnight courier to Renovatio terminating the KB707-02 CTA (El Paso site) pursuant to Section 9.2(a).

25.     All five CTAs have been properly and validly terminated, and Renovatio's refund obligations were triggered as of the date of termination.

## The Amount Owed: $870,432.24

26.     Following termination, Krystal performed a thorough internal reconciliation of all prepayments made to Renovatio against actual costs incurred and amounts invoiced by Renovatio during the course of the clinical trials.

27.     Krystal's reconciliation determined that the net amount due from Renovatio to Krystal is $870,432.24. This figure represents the difference between the total prepayments made by Krystal and the costs properly attributable to clinical trial services actually performed by Renovatio.

28.     As of the date of this Complaint, the entire $870,432.24 remains outstanding.

## Renovatio's Failure to Provide a Final Accounting or Refund

29.     Renovatio failed to deliver the final accounting required by Section 9.7 within ninety days of termination which constitutes a failure by Renovatio to perform a basic, time-specific contractual obligation.

30.     Renovatio failed to promptly refund the remaining unused prepayments as required by Section 3.3. More than ten months have now elapsed since the first termination notice. The word "promptly" in Section 3.3 cannot reasonably be construed to encompass a period exceeding ten months without any payment whatsoever being made.

## Krystal's Repeated, Unanswered Demands

31.     Krystal did not rush to litigation. To the contrary, Krystal made extraordinary efforts to resolve this matter without court intervention, extending Renovatio every reasonable opportunity to fulfill its obligations. Renovatio responded with delay, deflection, and ultimately silence.

32.     On October 29, 2025, Krystal's Senior Manager of Accounting, Joseph Appolonia, sent a written communication to Renovatio attaching Krystal's final accounting and requesting: (1) acknowledgment of receipt and confirmation of balances due; (2) initiation of refund; and (3) noting that undisputed amounts should be settled within sixty days per Section 9.7. Significantly, Renovatio did not respond.

33.     On November 11, 2025, Mr. Appolonia sent a follow-up communication to Dr. Talal A. Kayyal and Randa Madero (Renovatio's Accounting Clerk) and left a voicemail for Renovatio personnel. Renovatio did not respond.

7

34. On November 19, 2025, Mr. Appolonia sent a third follow-up communication and left a voicemail for Randa Madero. Renovatio did not respond.

35. On December 3, 2025, Mr. Appolonia sent a fourth written communication to Renovatio. Renovatio did not respond.

36. Renovatio did not respond to any of the four communications described in paragraphs 32 through 35.

37. On February 18, 2026, Krystal's General Counsel, John C. Thomas, sent a formal demand letter to Dr. Talal A. Kayyal. The demand required Renovatio, within seven days, to: (i) remit payment in full of the $870,432.24 outstanding balance; (ii) deliver all required patient data; and (iii) correct certain representations made to a third-party creditor.

38. Krystal also attempted to contact Renovatio's General Counsel, Shannon L. Warren, JD, as identified in the notice provisions of the CTAs, but oddly was informed by a Renovatio employee that no such individual was known at the organization.

**Krystal's Repeated Demands**

39. On February 26, 2026—more than five months after the first termination—Dr. Kayyal responded to Krystal's formal demand, citing changes in Renovatio's accounting department and requesting up to sixty days to complete an internal reconciliation.

40. On March 24, 2026, Krystal's counsel communicated that Krystal expected some payment within thirty days and completion of the full amount owed within sixty days—a generous accommodation of Renovatio's stated needs.

41. On April 3, 2026, Dr. Kayyal responded that Renovatio was "not opposed" to Krystal's proposal and would "assess internally."

8

42.    On May 21, 2026, Dr. Kayyal communicated that a payment he had referenced had not been received despite his own follow-up attempts. No payment was made to Krystal.

43.    On June 10, 2026, Krystal's counsel demanded immediate payment.

44.    On June 15, 2026, Dr. Kayyal communicated that he had been unavailable due to a family emergency. While Krystal does not minimize personal hardship, a family emergency does not excuse a corporation's failure to honor a nearly $900,000 financial obligation that has been outstanding for ten months.

45.    As of the date of this Complaint, Renovatio has not paid any portion of the $870,432.24 owed to Krystal. More than ten months have elapsed since termination of the CTAs, and more than four months have elapsed since the February 2026 formal demand. There is no legitimate basis for Renovatio's continued retention of Krystal's funds.

**COUNT I**
**(BREACH OF CONTRACT)**

46.    Krystal incorporates by reference the foregoing allegations.

47.    Under Delaware law, a breach of contract has occurred where (1) a contract exists, (2) defendant breaches a duty imposed by the contract, and (3) there are resultant damages. *Connelley v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016). Each of these elements is plainly satisfied here.

48.    A valid and enforceable contract exists between Krystal and Renovatio. *Envolve Pharm. Sols. v. Rite Aid Headquarters Corp.*, 2023 Del. Super. LEXIS 134, at *33-34 (Del. Super. Mar. 17, 2023). The CTAs constitute valid, binding, and enforceable contracts. Each CTA is supported by mutual consideration: Krystal agreed to pay for clinical trial services, and Renovatio agreed to perform those services and to return any unused prepayments upon termination. The

9

existence of the CTAs is not in dispute. Renovatio's principal, Dr. Kayyal, has acknowledged the agreements and the refund obligations in his written communications.

49.    Delaware courts adhere to the objective theory of contracts, giving effect to the plain meaning of clear and unambiguous contractual terms. *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). The refund obligations in Sections 3.3 and 9.7 are clear and unambiguous. They impose mandatory duties on Renovatio—not discretionary ones. The word "will" in Section 3.3 ("all of the remaining amount of all Prepayments will be promptly refunded") is not aspirational; it is obligatory.

50.    Renovatio breached the CTAs by:

 a. Failing to deliver to Krystal a final accounting of amounts due within ninety days after termination as required by Section 9.7;

 b. Failing to pay undisputed amounts within sixty days after the final accounting as required by Section 9.7;

 c. Failing to promptly refund unused prepayments upon termination as required by Section 3.3; and

 d. Failing to refund unearned advance subject payments at the time of study termination as required by Section 9.7.

51.    Renovatio's obligations under Sections 3.3 and 9.7 survived termination of the CTAs pursuant to Section 9.8.

52.    Despite repeated demands, Renovatio has failed and refused to pay the amounts owed.

53.    As a direct and proximate result of Renovatio's breaches, Krystal has been damaged in an amount not less than $870,432.24. This amount is the product of Krystal's detailed internal

reconciliation of all prepayments against all costs properly attributable to services actually performed. Renovatio has never disputed that this amount is due.

54.     Krystal is entitled to recover pre-judgment interest on the amount owed at the applicable rate under Delaware law from the date payment was due.

55.     Pursuant to Section 10.1, Krystal is entitled to pursue all available legal and equitable remedies.

**COUNT II**
**(UNJUST ENRICHMENT)**
**(Pleaded in the Alternative)**

56.     Krystal incorporates by reference the foregoing allegations.

57.     Count II is pled in the alternative to Count I, as expressly permitted by Federal Rule of Civil Procedure 8(d)(2), which provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."

58.     In the event that the Court determines that no enforceable express contract exists between Krystal and Renovatio, Krystal is entitled to recover under the theory off unjust enrichment.

59.     Under Delaware law, to state a claim for unjust enrichment, "a plaintiff must plead: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law." *State ex rel. Jennings v. Monsanto Co., Solutia*, 299 A.3d 372, 390-91 (Del. 2023). Each element is satisfied here.

60.     Krystal conferred a benefit upon Renovatio in the form of prepayments totaling $2,075,663.49 for clinical trial services. Of that amount, $870,432.24 was not utilized to offset

11

costs of clinical trial services actually performed by Renovatio and remains in Renovatio's possession. Renovatio has been enriched by the retention of those funds.

61.    Krystal has been impoverished by the same amount—$870,432.24—which it paid to Renovatio in advance and which Renovatio has refused to return despite having no legitimate basis for retaining it.

62.    There is no justification for Renovatio's retention of the $870,432.24, as the prepayments were made in anticipation of clinical trial services that were never performed.

63.    Under the circumstances, it would be unjust and inequitable for Renovatio to retain the $870,432.24 without payment to Krystal, and Krystal is entitled to restitution in that amount.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Krystal Biotech, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Renovatio Clinical, LLC and grant the following relief:

a.  Under Count I (Breach of Contract), an award of damages in an amount not less than $870,432.24;

b.  Under Count II (Unjust Enrichment), in the alternative, an award of damages in an amount not less than $870,432.24;

c.  Pre-judgment interest at the applicable rate under Delaware law from the date each payment obligation became due;

d.  Post-judgment interest at the rate prescribed by 28 U.S.C. § 1961;

e.  Attorneys' fees and court costs to the extent permitted by the CTAs or applicable law; and

f.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Krystal Biotech, Inc. hereby demands a trial by jury on all issues so triable.

Date: July 30, 2026

Respectfully submitted,

*/s/ Moira Cain-Mannix*
Moira Cain-Mannix (PA ID No. 81131)
Email:  cain-mannix@marcus-shapira.com
Elly Heller-Toig (PA ID No. 33244)
Email: ehtoig@marcus-shapira.com
Marie Feyche (PA ID No. 334353)
Email : feyche@marcus-shapira.com
MARCUS & SHAPIRA LLP
301 Grant Street
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219-6401
Telephone: 412-471-3490
Facsimile: 412-391-8758

*Counsel for Plaintiff Krystal Biotech, Inc.*

13